UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONALD SOVA,

          Plaintiff,

v.                     7:13-CV-0570

                     (TJM/TWD)

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

APPEARANCES:            OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN  VICTORIA M. ESPOSITO, ESQ.
NEW YORK, INC. - CANTON
*Counsel for Plaintiff*
17 Hodskin Street
P.O. Box 648
Canton, NY 13617

OFFICE OF REGIONAL GENERAL COUNSEL VERNON NORWOOD, ESQ.
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **REPORT AND RECOMMENDATION**

  This matter was referred to the undersigned for report and recommendation by the Honorable Thomas J. McAvoy, United States Senior District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(d). This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed

when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the decision of the Commissioner be affirmed.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was forty-six years old at the time of the hearing. (T. at 35.) He has an eighth grade education, and at least some of his classes were special education. (T. at 36.) For his entire working life, Plaintiff has performed manual labor in either farming or construction. (T. at 37-39.) Plaintiff alleges disability due to knee injury, borderline intellectual functioning, back problems, and shoulder problems. (T. at 16-17.)

Plaintiff applied for supplemental security income ("SSI") on June 21, 2010. (T. at 14.) The application was denied on October 4, 2010. (T. at 76.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T. at 84.) The hearing was held on August 11, 2011. (T. at 30.) On October 20, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 24-25.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 25, 2013. (T. at 1.) Plaintiff commenced this action on May 16, 2013. (Dkt. No. 1.)

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* at § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a) (2006)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920 (2012). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

3

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.* (quoting *Perez*, 77 F.3d at 46).

**B.      Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2006); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "[A]n ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (quoting *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005)); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might

4

accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial evidence supporting the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### III. THE ALJ'S DECISION

Here, the ALJ found that Plaintiff was capable of sedentary work and found Plaintiff not disabled under the medical-vocational rules ("grids") at step five. (T. at 18, 24.) First, the ALJ found that Plaintiff's torn medial meniscus, status-post arthroscopic repair, and borderline intellectual functioning were "severe impairments" at step two. (T. at 16.) Then, he found that those severe impairments did not meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. at 17.) After considering the evidence, the ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform sedentary work. (T. at 18.) In so doing, the ALJ found Plaintiff's statements about the severity of his limitations only "somewhat credible." (T. at 21.) Because Plaintiff's past relevant work as either a farm worker

5

or a construction worker was performed at a heavy work level, the ALJ found Plaintiff unable to perform his past relevant work at step four. (T. at 23-24.) However, the ALJ found that Plaintiff was not disabled under the analysis of the grids at step five, based on Plaintiff's age, education, work experience, and residual functional capacity. (T. at 24.) Specifically, the ALJ found that Plaintiff was able to perform unskilled sedentary work. *Id.*

## IV. THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by: (1) using an improper legal standard; (2) improperly weighing the medical evidence; and (3) improperly weighing Plaintiff's credibility. (Dkt. No. 15.)

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed. (Dkt. No. 16.)

## V. DISCUSSION

### A. Legal Standard and the ALJ's Language

Plaintiff argues that the ALJ's use of the term "total disability" in relation to the allegations of Plaintiff's limitations indicates the use of an improper legal standard, and requests remand on those grounds. (Dkt. No 15 at 10.) Although Defendant's memorandum of law includes a subtitle indicating a response to Plaintiff's argument on that page of Plaintiff's brief, Defendant does not appear to have responded to this argument by Plaintiff. (Dkt. No. 16 at 12.) Nevertheless, for the reasons outlined below, Plaintiff's argument is without merit.

Plaintiff places great significance on the statement by the ALJ that Plaintiff's testimony and medical evidence was "not consistent with allegations of otherwise total disability." (Dkt. No. 15 at 10, citing T. at 21, 22.) Plaintiff argues that this language indicates a departure on the

part of the ALJ from the proper legal standard, which is "whether a claimant has 'a severe impairment(s) that makes [that claimant] unable to do . . . past relevant work . . . or any other substantial gainful work that exists in the national economy.'" (Dkt. No. 15 at 10, quoting 20 C.F.R. § 416.905 (2013).)

This semantic argument, however, is without merit. Initially, it is noted that in both of the cited instances of the use of the term "total disability," the ALJ was referring to Plaintiff's allegations of "total disability," and not the legal standard which he was applying. (T. at 21, 22.) Furthermore, the ALJ clarifies his reasoning by saying that he was "not persuaded that the claimant's pain is at a level of severity or occurs with such persistency of frequency as to preclude the performance of all levels of activity on a sustained basis." (T. at 23.) This implies that the ALJ's use of the term "total disability" is equivalent to being so disabled as to be unable to perform past relevant work or any other substantial gainful work that exists in the national economy. *See* 42 U.S.C. § 1382c(a)(3)(B). The reasoning put forth in the ALJ's decision does not indicate to this Court, as Plaintiff contends, that the ALJ was using an incorrect legal standard. Lastly, it is noted that courts in this district, in the past, have found nothing inherently improper about the term "total disability" in an ALJ's decision, and have in fact used the term to describe the level of disability at which a claimant can succeed on a disability claim. *See, e.g., Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (citing *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999) ("Only where the record is 'sufficiently complete' and provides 'persuasive evidence of total disability,' thus rendering further proceedings pointless, should the district court award benefits itself and remand simply for calculation of such benefits.").

Plaintiff also argues that the ALJ used an improper legal standard when he stated "'it is

7

not clear whether [Plaintiff] suffers any significant limitations in mental functioning, which as a result would preclude all functioning.'" (Dkt. No. 15 at 10, quoting T. at 19.) For the same reasoning as above, this Court is not persuaded that this language alone indicates an improper legal standard. It is noted that, in the paragraph immediately prior to the statement in question, the ALJ discussed the Plaintiff's ability to function in a work setting. (T. at 19.) Taking this into consideration, the ALJ's statement indicates merely that he was unable to find evidence that Plaintiff suffers any significant limitations in mental functioning, and that such limitations, if present, would preclude Plaintiff's ability to function at any level of work. Again, it is not fatal merely that the ALJ used the language of total disability, so long as his actual reasoning follows the proper standard of whether Plaintiff is capable of working based on his limitations. The ALJ's decision analyzes Plaintiff's specific mental capabilities in great detail to determine what limitations might affect his ability to function in a work setting, and found that the Plaintiff "retains the basic mental demands of competitive work." (T. at 20-21.) There is no indication that the ALJ has used an improper standard, despite his choice of terminology. As such, Plaintiff's argument in this regard is without merit.

### B. Medical Evidence

Plaintiff argues that the ALJ incorrectly weighed the medical evidence of record. (Dkt. No. 15 at 11.) Defendant argues that the medical evidence supports the ALJ's RFC determination. (Dkt. No. 16 at 12.) For the reasons set forth below, Defendant is correct.

First, Plaintiff argues that the ALJ erred by failing to consider Dr. Williams' diagnosis of "Rule Out Personality Disorder with narcissistic features." (Dkt. No. 15 at 11, citing T. at 16, 199.) As Defendant correctly notes, "[i]t is sufficient that the ALJ noted that he carefully

considered the exhibits presented in evidence in reaching his decision," and an ALJ need not "explicitly . . . reconcile every conflicting shred of medical testimony." *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981). Furthermore, "[i]t is the function of the Secretary, not the reviewing courts, to resolve evidentiary conflicts," such as the one in this case. *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted). Here, while the ALJ did not address the specific diagnosis by Dr. Williams, he did analyze the opinion of Dr. Williams in great detail. (T. at 19-20.) Despite diagnosing "Rule Out Personality Disorder with narcissistic features," Dr. Williams opined that Plaintiff appeared to be giving up easily, and could likely actually perform at a higher level than his test results indicated. (T. at 200.) Dr. Williams' opinion also stated that Plaintiff was competent to handle his own funds, and that his work history suggested a higher level of functioning than the test results. *Id*. This is consistent with the ALJ's finding that Plaintiff's limitations were not as great as he alleged. (T. at 21.)

Other evidence also supports the ALJ's decision in this regard. State agency psychological consultant Herrick opined that the evidence did not support any marked mental limitations, and that Plaintiff's mental abilities would allow him to function in a work environment. (T. at 218.) An ALJ is entitled to rely on the opinion of a state agency psychological consultant if it is consistent with the record. 20 C.F.R. § 416.927(e)(2)(ii). Dr. William Kimball, a consultative psychologist, opined that Plaintiff had only mild limitations in understanding, remembering, and carrying out simple instructions and making judgments on simple work decisions. (T. at 285.) He could otherwise generally function well with simple tasks, but he had marked impairments with complex instructions and decisions. *Id.* Dr. Kimball also found that Plaintiff had no limitations in interacting with co-workers, and only mild

9

limitations interacting with the public and supervisors; he found only mild limitations responding to work situations and changes in a routine work setting. *Id*. at 286. Because Dr. Williams' opinion, despite the diagnosis, suggested that Plaintiff was exaggerating his limitations, and the remaining medical evidence did not find such severe limitations, the ALJ's failure to note a specific diagnosis is harmless, if it is error at all.

Plaintiff further argues that the ALJ incorrectly disregarded Dr. Rivera's diagnosis of lower back pain syndrome. (Dkt. No. 15 at 11.) Plaintiff assigns error to the ALJ's statement that "[n]o imaging studies have been performed to document abnormalities referable to the claimant's spine." *Id*. (citing T. at 17). Plaintiff argues that there was, in fact, such an imaging study, and refers to an X-ray from December 27, 2010, which Plaintiff claims "shows degenerative changes to his dorsal spine." *Id*. at 12. The report in question in fact indicates only "*mild* degenerative changes of the dorsal spine." (T. at 255, emphasis added.)

While this makes the ALJ's statement that there are *no* imaging studies indicating spinal abnormalities incorrect, the error is harmless. The ALJ found an RFC of sedentary work level, which "requires the ability to lift no more than ten pounds, to sit for extended periods of time, and to walk and stand occasionally." *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing 20 C.F.R. §§ 404.1567(a), 416.967(a)). The only other evidence which supports any limitations based on lower back pain is Dr. Rivera's consultative examination, and Dr. Rivera found no limitation to sitting or standing, and only mild to moderate limitations in walking, due to back pain. (T. at 224.) Plaintiff never received treatment for any lower back pain, and there is no evidence of any significant limitation which would contradict the ALJ's finding of sedentary RFC. Therefore, even if the ALJ were to reconsider the lower back pain based on this single X-

ray showing mild degenerative changes, the outcome would be the same, and the error is therefore harmless.

Plaintiff also argues that the ALJ failed to properly account for Plaintiff's nonexertional limitations insofar as they would erode the sedentary work available to Plaintiff. (Dkt. No. 15 at 12-13.) To the extent that this argument reiterates the above argument regarding legal standards, it is without merit. Additionally, Plaintiff argues that Dr. Kimball found that Plaintiff would have "great difficulty" doing a desk job, due to his low academic skills, his problems learning new tasks, and his need for "concrete instructions." (Dkt. No. 15 at 13, citing T. at 283.) However, this is inconsistent with other substantial evidence of record. The state agency psychological consultant found that Plaintiff "has sufficient [mental RFC] such that he is capable of adequately understanding and remembering; attending, concentrating and persisting; and interacting with others such that he could do work-related functions." (T. at 218.) Dr. Williams opined that Plaintiff's memory and abstract thinking were good. (T. at 198.) Notably, Dr. Williams did not indicate any limitation in Plaintiff's ability to follow instructions during the testing. (T. at 198-200.) "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). This is the case here. Because substantial evidence supports the ALJ's determination of Plaintiff's mental RFC, that finding must be given conclusive effect.

Plaintiff also argues that the ALJ's RFC determination was not preceded by a function by function analysis, and is therefore "fatally flawed." (Dkt. No. 15 at 14.) Specifically, Plaintiff

explains that the ALJ failed to consider the Plaintiff's limitations in prolonged sitting "which were apparent from [Plaintiff's] testimony." *Id*. at 15. First, it is noted that the ALJ's decision does include a function-by-function analysis of Plaintiff's limitations. (T. at 18-23.) As to the specific allegation, limitations in sitting, there is no evidence other than Plaintiff's testimony that indicates he has any problems sitting. The medical examination by Dr. Rivera found no limitations in sitting. (T. at 224.) Because there is no medical opinion indicating limitations in sitting, this is purely a credibility determination.

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19[1] (S.D.N.Y. July 28, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing."). Since there is no medical evidence in the record concerning any limitations in sitting, this Court gives deference to the ALJ's finding, and Plaintiff's argument here is without merit. Further issues concerning Plaintiff's credibility are addressed below.

Plaintiff argues that the ALJ failed to properly consider his limitations in lifting, carrying, pushing, pulling, or reaching; and did not address the severity of his reaching limitation before consulting the grids. (Dkt. No. 15 at 15.) First, it is noted that the ALJ did, in fact, consider Plaintiff's limitations in lifting, carrying, pushing, and pulling. (T. at 22.) Plaintiff relies on

---

[1] This decision is not available on Westlaw.

*Selian v. Astrue*, 708 F.3d 409 (2d Cir. 2013), to argue that this case should be remanded so that the ALJ can explicitly determine whether Plaintiff's reaching limitation is "negligible," and, if it sufficiently erodes his work opportunities, then the ALJ should call for vocational expert testimony. (Dkt. No. 15 at 15.) This Court differentiates *Selian*. The ALJ in *Selian* found that Plaintiff could reach only "occasionally," and did not make a finding on whether the limitation was "negligible," which the court determined precluded the reliance on the grids without vocational testimony. *Selian*, 708 F.3d at 422. However, in *Selian*, the plaintiff had alleged severe limitations to reaching, presumably in all directions, and was found capable of light work. *Id*. at 421-22. It was unclear to the *Selian* court, based on the record, where Selian fell on the spectrum of reaching ability, which could limit his job possibilities. *Id.* at 422.

Here, Plaintiff's testimony about his reaching limitation, and the only medical evidence corroborating it, specifically note that he only has difficulty reaching over his head. (T. at 58, 224.) The ALJ noted in his decision that Plaintiff had some limitation involving his shoulder. (T. at 19.) While reaching is required in most jobs, SSR 85-15, 1985 SSR LEXIS 20 at *19, 1985 WL 56857, at *7 (Jan. 1, 1985), sedentary work is not substantially eroded where a claimant has only overhead reaching limitations, as opposed to limitations reaching in any direction. *See Curran v. Astrue*, Civ. No. 11-5894, 2012 U.S. Dist. LEXIS 161766, 2012 WL 5494616 (E.D. Pa. November 13, 2012); *Burgess v. Colvin*, No. 4:13-CV-6177 (MAT), 2014 U.S. Dist. LEXIS 64472, 2014 WL 1875360 (W.D.N.Y. May 09, 2014); *Smith v. Astrue*, 2014 U.S. Dist. LEXIS 35975, 2014 WL 1092761 (N.D. Ala. March 19, 2014.) Given that the ALJ did consider Plaintiff's limitation, and found him capable of sedentary work, in which reaching overhead is rare, the ALJ's failure to specifically make a finding of whether or not the reaching

limitation was "negligible" is harmless error. A remand for reconsideration of that point would not result in a different finding.

Plaintiff's remaining arguments rest on the underlying assumption that the ALJ's finding of mental RFC is not supported by substantial evidence. (Dkt. No. 15 at 13.) As previously determined above, they are without merit.

### C. Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly analyze the credibility of his testimony regarding the severity of his impairments. (Dkt. No. 15 at 15.) Insofar as this argument mirrors the semantic arguments above, they are without merit. In addition, Plaintiff places great significance on a finding by the ALJ that Plaintiff is capable of doing his own finances, stating that "it is unclear . . . why the ALJ believed that [Plaintiff] handled his own finances." (Dkt. No. 15 at 16.) Although the Plaintiff testified that he no longer had any finances that were not handled by the government, the state agency medical consultant found that Plaintiff "is able to handle money" and Dr. Williams opined that Plaintiff is "able to handle his funds." (T. at 49, 200, 218.) The statement by the ALJ that Plaintiff handled his own funds, in fact, was incorrect, but the record provides substantial evidence that Plaintiff was capable of such, and therefore the error is harmless. The ALJ based his determination of the severity of Plaintiff's borderline intellectual functioning on the assumption that Plaintiff was capable of handling his own money. (T. at 22.) Regardless of the language of the decision, that assumption is supported by substantial evidence and therefore his reasoning must be affirmed. The factual issue of whether Plaintiff had any funds to manage is not relevant.

Plaintiff further argues that the ALJ's reasoning was flawed when he held "that

[Plaintiff's] allegations were not credible because he had previously worked as a farm laborer." (Dkt. No. 15 at 17) (citing T. at 23.) Plaintiff then points to the knee injury as the reason why this reasoning is error. (Dkt. No. 15 at 17.) However, the ALJ reasoned that Plaintiff's borderline intellectual functioning, back pain, and shoulder condition were not as severe as Plaintiff alleged because those three conditions existed during the time in which Plaintiff worked in construction and in farm labor. (T. at 23.) The ALJ noted that "[i]t is difficult to believe that the claimant would be able to work for such an extensive period in a job that requires focus, bending, walking, standing, reaching, and lifting and carrying of heavy weights, if he was truly as limited as he claims. The claimant's testimony establishes that he retained the physical endurance to sustain a large range of functional ability." *Id*. This reasoning does not concern Plaintiff's knee injury, but rather, the limitations that allegedly existed prior to the knee injury. The ALJ properly used common sense in interpreting the record. *See Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981) (finding no error in ALJ's reasoning that was based on matters "within the common knowledge and experience of ordinary men").

Plaintiff also argues that the ALJ committed error when he used Plaintiff's failure to seek physical therapy for his knee injury to undermine Plaintiff's credibility, without considering Plaintiff's explanation that he could not find a physical therapist who would accept Medicaid. (Dkt. No. 15 at 17, citing T. at 22, 42.) In arguing that an ALJ must consider reasonable explanations before finding adversely based on a lack of treatment, Plaintiff cites *Stone v. Colvin*, No. 1:12–CV–239 (TJM/VEB), 2013 U.S. Dist. LEXIS 121019, at *13, 2013 WL 4520536, at *5

(N.D.N.Y. August 26, 2013).² (Dkt. No. 15 at 17.) However, this Court distinguishes *Stone* from the facts of this case. In *Stone*, the evidence suggested that there was a significant gap in treatment records from Stone's treating physician, and the ALJ in that case interpreted the gap to mean that Stone had not pursued treatment. *Stone,* 2013 U.S. Dist. LEXIS 121019, at *10-12, 2013 WL 4520536, at *4-5. Although the *Stone* decision cites a Social Security Administration ruling which indicates that an ALJ must consider explanations before making adverse findings based on lack of treatment, the error to which the *Stone* decision points was the failure by the ALJ to affirmatively develop the record where there was an apparent gap. *Id*. (citing SSR 96-7p, 1996 SSR LEXIS 4 (July 2, 1996)). Here, the record is complete, and there is no such gap.

To the extent that the ALJ may have erred by failing to consider Plaintiff's explanation in accordance with the Social Security Administration ruling cited in *Stone*, that error is harmless. Other substantial evidence of record indicates that Plaintiff's pain was not as severe as alleged. Dr. Savage remarks in his treatment notes that Plaintiff refused a cortisone shot on the same day he was referred for physical therapy. (T. at 275.) Plaintiff testified that he does not take any pain medication. (T. at 43.) Because the ALJ's credibility determination is supported by substantial evidence other than the statement in question, reconsideration on remand would not likely result in a different outcome, and therefore the error is harmless.

Plaintiff's final argument is that "the ALJ's credibility analysis is fatally flawed insofar as he found [Plaintiff] not to be credible 'to the extent [his allegations] are inconsistent with the above residual functional capacity assessment.'" (Dkt. No. 15 at 18, citing T. at 21.) While it is

---

²     Lexis lists the date for this decision as June 4, 2013. The Court has used the date used by Westlaw, which reflects the date on which the district court adopted the magistrate judge's report and recommendation.

improper to question a plaintiff's credibility based on a predetermined RFC, because the credibility determination affects what evidence is used to determine the RFC, that is not what has happened here. First, as Defendant states, this language is boilerplate text taken from a document used by 1,400 ALJs to prepare hundreds of thousands of decisions per year. (Dkt. No. 16 at 16, citation omitted.) Furthermore, it is not error merely to use this language, so long as the actual RFC analysis provides a basis for the finding by discussing a claimant's complaints in the context of a complete medical record. *Cruz v. Astrue,* 941 F. Supp. 2d 483, 499 (S.D.N.Y. 2013). Here, the "above residual functional capacity assessment" to which the ALJ refers is a summary and analysis of the complete medical record, and the ALJ here is merely stating that, insofar as Plaintiff's statements do not find support in the medical records, they are not credible. (T. at 18-21.) As noted above, the medical records support the RFC determination and therefore Plaintiff's argument is without merit.

For the reasons set forth above, the ALJ's decision is supported by substantial evidence, and any legal errors that may exist are harmless. It is therefore recommended that the decision of the Commissioner be affirmed.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the decision of the Commissioner be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated: August 29, 2014
      Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge